ARCHIE B. JONES, Appellant, *v.* CITY OF BINGHAMTON, Respondent.
EVERETTE E. ALLEN, Appellant, *v.* CITY OF BINGHAMTON,
Respondent.

Third Department, January 11, 1939.

*Hinman, Howard & Kattell* [*A. Lawrence Abrams* of counsel],
for the appellants.

*Samuel H. Pearis, Corporation Counsel,* for the respondent.

McNAMEE, J. Binghamton is a second class city having a
population between 75,000 and 90,000, and prior to January 1,
1932, had a comptroller and a treasurer, who pursuant to section 16
of the Second Class Cities Law received salaries of $5,000 each.
On July 6, 1931, the city adopted the Simplified Form of Govern-
ment known as Plan C, pursuant to chapter 444 of the Laws of
1914, and in particular article V thereof.

The mayor and councilmen went into office under Plan C on
January 1, 1932, and on March 21, 1932, the council adopted an
ordinance directing the city manager to appoint a director of
finance to be head of the department of finance of the city, and also

to appoint a comptroller at a salary of $3,600 per year, who was to have "the powers and perform the duties conferred by law upon the comptroller of the city of Binghamton," and to have such other powers and duties as the council, city manager and the director of finance might prescribe; and also to appoint a treasurer, at $4,000 a year, with his respective and corresponding duties. On April 16, 1932, the plaintiff Allen was appointed comptroller and the plaintiff Jones was appointed treasurer, in compliance with the ordinance mentioned, and served as such until December 31, 1937.

These actions were brought by the respective plaintiffs to recover for that period of service the differences between the salaries as stated in the ordinance and the amount specified as above for a comptroller and a treasurer under the Second Class Cities Law. To complaints alleging these facts an answer was interposed amounting to a general denial. The plaintiffs then moved for judgment on the pleadings in each action under rule 113 of the Rules of Civil Practice, on the ground that there were no defenses to the actions. These motions were denied, and from the orders thereon appeals were taken.

The plaintiffs contended that they are respectively comptroller and treasurer of the defendant city, under and by virtue of section 16 of the Second Class Cities Law, and entitled to the salaries prescribed therein; that the council of the city is without power to "reduce" those salaries, and that the city has no power to fix other salaries. With these conclusions we are unable to agree.

Articles I, II and III (sections 1 to 51) of the Optional City Government Law apply to all of the seven plans of city government provided for therein, and article V (sections 85 to 93) applies to Plan C thereof.

By these general provisions the existing "powers of a city" are not abridged (§ 5), and the legislative powers of the council may be exercised by ordinance or rule, as distinguished from local laws (§ 36). The charter of the city and all inconsistent general and special laws applicable thereto are superseded by the Optional City Government Law and the "passing of ordinances" relating to the matters provided for in the charter or such general and special laws (§§ 8 and 23). The laws regulating powers and duties of officers and employees, as well as the exercise and performance thereof, may be superseded by ordinance; and on the passage of any such ordinance "every provision of the charter *or of the Second Class Cities Law*," regulating those matters, ceases to have any force in the city (§ 37).

By reference to the sections governing Plan C in particular, it is observed that "All the legislative powers of the city, however

conferred upon or possessed by it," are vested in the council (§ 87). It is not amiss to note that Plan C prescribes no officers for the city, except a mayor, six councilmen, and a city manager; but it does provide that the city shall have " Such city officers and employees as the council shall determine are necessary for the proper administration of the city " (§ 92), and that these shall perform such duties as the city manager shall require, under the general regulation of the council (§ 93).

From these provisions of the statute it becomes apparent that the Legislature intended that the city should have no offices, no officers, nor employees other than the eight described above, except such as the council should find necessary; and, further, that the offices existing under other statutes and continued after the adoption of Plan C should remain only until such time as the council should supersede them by the creation of new offices and the assignment of the duties to be attached to them. Accordingly, when the plaintiffs held over as traditional or statutory officers under the Second Class Cities Law, after Plan C became effective, it was only until the council passed the ordinance creating the offices of comptroller and treasurer of the city of Binghamton and until duties were assigned by the city manager. Under the ordinance these became new offices with new duties, whether traditional or not, creatures of the city, and the Second Class Cities Law thereupon ceased to have force in that regard in Binghamton. And from that time on the plaintiffs held their respective offices under the ordinance, and not otherwise.

Consideration might well end here were it not for the contention that the Optional City Government Law, under Plan C, gave the defendant city no power to fix the salaries of comptroller and treasurer. It is to be noted that this great statute contemplates city government in a city under one of seven separate plans, each devoted to the principle of city home rule and to complete city government in accordance with the plan adopted. According to the provisions for each plan, express provision is made for fixing the compensation of officers and employees, except for Plan C. Here there is no express and direct power conferred in that particular. No express grant of power is necessary. Upon a view of the entire statute and the comprehensive and balanced scheme resorted to by the Legislature, it seems a reasonable conclusion that the omission was due to the draftman's inadvertence. But this oversight, if it were one, was not fatal. The statute contains no prohibition against the exercise of this power to fix compensation. Officers and employees are essential to a city to enable it to perform the functions imposed upon it by law. In conformity

with the doctrine of *pari materia*, and under the rule of necessary implication, and within the exercise of the inherent " powers of a city," the city not only had the power but the duty to fix and provide for the proper compensation of such officers and employees as it deemed necessary to call into its service.

The orders denying plaintiffs' motions to strike out the answers and for judgments on the pleadings should be affirmed, with costs.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; RHODES, J., concurs in the result.

In each case: Order, denying plaintiff's motion to strike out the answer, and for judgment on the pleadings, affirmed, with twenty-five dollars costs in each action.